UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

EDDIE BRYANT,

      Plaintiff,

    - vs -                                    Case No.: 2:14-cv-5621
                                                (DRH)(ARL)

SOUTH COUNTRY CENTRAL SCHOOL DISTRICT;
BOARD OF EDUCATION, SOUTH COUNTRY
CENTRAL SCHOOL DISTRICT;
CHRIS PICINI, President of the Board of Education,
South Country Central School District and Individually;
CAROL HERMANN, Vice President of the Board of
Education, South Country Central School District
and Individually;
ROCCO DiVITO, Trustee, Board of Education,
South Country Central School District and Individually;
LISA DiSANTO GROSSMAN, Trustee,
South Country Central School District and Individually;
JEANNETTE MISTLER, Trustee,
South Country Central School District and Individually;
JULIO MORALES, Trustee,
South Country Central School District and Individually;
ROB POWELL, Trustee,
South Country Central School District and Individually;
BARBARA SCHATZMAN, Trustee,
South Country Central School District and Individually;
ANTOINETTE HUFFINE, Trustee,
South Country Central School District and Individually;
DANIELLE SKELLY, Trustee,
South Country Central School District and Individually;
ALLISON STINES, Trustee,
South Country Central School District and Individually;
DR. JOSEPH GIANI, Superintendent of Schools,
South Country Central School District and Individually; and
NELSON BRIGGS, Assistant Superintendent for
Human Resources, South Country Central School
District and Individually,

      Defendants.

_____

*Appearances*:

HARRIET A. GILLIAM, ESQ.                                     For the Plaintiff
P.O. Box 1485
Riverhead, New York
          By: Harriet A. Gilliam, Esq.

DEVITT SPELLMAN BARRETT LLP                                  For the Defendants
50 Route 111
Smithtown, New York
          By: Joshua S. Shteierman, Esq.


**HURLEY, Senior District Judge**:


## MEMORANDUM & ORDER
### REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### I. INTRODUCTION

The Defendants[1] move the Court for summary judgment in their favor on all of the racial-

discrimination-based claims and state law claims brought by Plaintiff ("Bryant").  (*See* ECF Nos.

28, 28-24; hereafter, the "Summary Judgment Motion".)  Bryant opposes the Summary Judgment

Motion *in toto*.  (*See* ECF No. 29-22; hereafter, the "Opposition".)  For the reasons that follow,

the Summary Judgment Motion is granted.

---

[1] The Court shall refer to the Defendants as follows:
(a) the South Country Central School District as the "School District";
(b) the Board of Education, South Country Central School District, as the "Board";
(c) Chris Picini, Carol Hermann, Rocco Divito, Lisa Disanto Grossman, Jeannette Mistler, Julio Morales, Rob Powell, Barbara Schatzman, Antoinette Huffine, Danielle Skelly, and Allison Stines collectively as the "Trustees";
(d) Dr. Joseph Giani as the "Superintendent Giani";
(e) Nelson Briggs as "Assistant Superintendent Briggs" or "Briggs"; and
(f) the School District, Board, Trustees, Superintendent Giani, and Briggs collectively, as the "Defendants".

## II. Background[2]

*A. Factual Background*

### 1. Generally

Bryant is an African-American male who, on July 12, 2012 (the "Start Date"), was hired as a substitute custodian for the School District. As such, Bryant would be called to work as a substitute custodian in various school buildings within the School District. For the balance of 2012, Bryant was routinely called to work two or three times per week. His work assignments increased in 2013, with Bryant being called into work almost every day of the work week.

### 2. Bryant's Applying for Full-Time Custodial Positions

From Bryant's Start Date to September 23, 2013, the School District posted two vacancy notices for full-time custodial positions: one in December 2012 (the "First Posting"), and one in March 2013 (the "Second Posting"). Bryant submitted an application for both Postings.

As to the First Posting: Bryant was not granted an interview for the First Posting. At the time, he had been with the School District for five months. The person hired for the First Posting

---

[2] Unless otherwise noted, this "Background" section is drawn the Defendants' Local Rule 56.1 Statements (*see* ECF No. 28-22; hereafter, "Defendants' LR 56.1 Statement"; *see also* ECF No. 29-23; hereafter, "Bryant's LR 56.1 Statement"), the exhibits attached to the Shteierman Declaration (*see* ECF No. 28.1 at ¶6), and the exhibits attached to the Gilliam Declaration, submitted in support of Bryant's opposition to the Summary Judgment Motion (*see* ECF No. 29 at ¶3). *See also infra* Part III(B) (discussing Bryant's LR 56.1 Statement and the Court's determinations regarding ¶¶1-35).

Herein, citations to Bryant's 50-H examination testimony will be cited as "Bryant 50-H Exam at [page number]:[line numbers]". In the record, the transcript of Bryant's 50-H examination is attached as Exhibit B to the Gillian Declaration (*see* ECF No. 29-2) and as Exhibit D to the Shteierman Declaration (*see* ECF No. 28-6). Citations to Bryant's deposition testimony will be cited as "Bryant Depo. at [page number]:[line numbers]." It is attached to the Shteierman Declaration as Exhibit L (*see* ECF No. 28-14). Bryant has included only a three-paged excerpt of his deposition testimony in his submissions. (*See* Exhibit T, attached to Gilliam Decl., ECF No. 29-20.)

was a white male who had been a substitute custodian for the School District for almost two years.  Despite the School District having a Non-Discrimination Policy and a Consolidated Complaint Procedure for students and employees, Bryant did not lodge a discrimination complaint when he did not get an interview for the First Posting.

As to the Second Posting:  Bryant was one of 40 applicants granted a first interview. Thereafter, four candidates where selected for a second interview; Bryant was one of the four. Ultimately, however, the job went to another candidate who was white, had been a substitute custodian for nearly three years before the Second Posting (*i.e.*, a full year longer than Bryant), and who had scored the best on the five identical questions posed to the applicants.  As with the First Posting, Bryant did not file a discrimination complaint with the School District when he was not awarded the Second Posting position.  Indeed, he testified that he was "fine" with the other substitute custodian having been chosen for the job.  (Bryant 50-H Exam at 49:10.)

### 3. Bryant's Interaction with Westerbeke

On September 20, 2013, Bryant was substituting at a middle school in the School District. On that day, he had a two to three minute conversation with cafeteria worker Kim Westerbeke ("Westerbeke"), whom he had first met four days prior.  Part of the conversation was about Westerbeke successfully getting out of an abusive relationship.  As part of the conversation, Bryant asked Westerbeke whether she was open-minded and would she be interested in making a video.  She indicated "yes" to the open-minded inquiry, but gave an ambivalent response regarding the video inquiry.[3]  Since he did not have time to explain his reasons for wanting to make a video, *i.e.*, that it related to his affiliation with his church and its youth group, Bryant

_____

[3] *See* Bryant Depo. at 28:19-25; *but see also* 29:4-7.

asked Westerbeke to see him before she left work so he could provide more information. She did

not do so. Therefore, Bryant left Westerbek a note with his mobile phone number and a request

for her to call or text him to further discuss her willingness to make a video (hereafter, the

"Note"). He left the Note near Westerbeke's name tag and apron.

### 4. Westerbeke's Complaint and Briggs' Subsequent Meeting with Bryant

Westerbeke did not discover Bryant's Note until Monday morning, September 23, 2013.

She brought it to the attention of the head custodian at the middle school, who, in turn, brought it

to the principal's attention. Thereafter, the principal met with Westerbeke and requested

Westerbeke write a statement explaining what occurred. Westerbeke complied, stating:

> On Friday Sept. 20, 2013 I Kim Westerbeke was approached by
> Eddie the substitute custodian and was asked if I wanted to do a
> video with him. When he did not receive an answer Eddie
> continued to watch me the remainder of the day. I left work Friday
> at 2:15 p.m. with no further communication. He was standing
> outside the cafeteria I think waiting for me not knowing I carpool.
> When I arrived at work Monday Sept. 23, 2013 I had found a note
> from Eddie on my apron with his cell number wanting me to call or
> text him.

On September 23rd, the principal forwarded Westerbeke's statement, together with the Note and a

cover memorandum regarding the "alleged case of inappropriate conduct against" Bryant

(hereafter, the "Westerbeke Complaint") to Assistant Superintendent Briggs. (*See* Exhibit N,

attached to Shteierman Declaration.) The principal concluded her memorandum by stating, "As

per your directive, the undersigned did not conduct an investigation, but requests that Mr. Eddie

Bryant not serve as a substitute custodian at Frank P. Long Intermediate School." (*Id.*)

That same day, after receiving the Westerbeke Complaint, Briggs called Bryant using the

phone number contained in the Note. Bryant answered Briggs' call during which Briggs asked

Bryant to meet him the next day in his office. Bryant agreed, believing Briggs might be offering him a job "under the table". (Bryant 50-H Exam at 28:10-29:4.)

Bryant arrived at Briggs' office the next morning. During the meeting, Briggs informed Bryant that he had been forwarded the Westerbeke Complaint, including the Note. He also told Bryant that he had used the phone number in the Note to call Bryant. Briggs explained to Bryant that the incident had to be further investigated and that, until further notice, Bryant would not be called as a substitute custodian within the School District. (*See* Briggs' Aff. at ¶17 (ECF No. 28-2).) Briggs informed Bryant that, pending further investigation, he was directing the head custodians at the various schools within the School District to no longer call Bryant.

Bryant said little in the meeting; he did not provide any explanation for what occurred between him and Westerbeke. Bryant contends he was in shock and was neither given the opportunity, nor asked, to explain what transpired. (*See* Bryant's LR 56.1 Statement at ¶39 (additional material facts (citing Bryant 50-H Exam at 30:5-14).)

5. Events After the Briggs/Bryant September 2013 Meeting

After his meeting with Bryant, Briggs met with Westerbeke to further investigate her complaint; her recollection of the incident with Bryant did not change.

At the end of October 2013, Briggs called Bryant to arrange a further meeting to finish his investigation of the Westerbeke Complaint. Bryant told Briggs that he (Bryant) would have his attorney arrange a meeting with Briggs. No such meeting ever occurred. As a result, Briggs' investigation was never completed. Two consequences stem from the incomplete investigation: Bryant's name was not removed from the substitute custodians list, and the Board has not made a final determination regarding Bryant's employment status. Yet, while his name remained on the

School District's substitute custodians list, Bryant has not been called for any further work assignments.

6. Bryant's Subsequent Racial Discrimination Letter Complaint and Other Relevant Facts

On January 17, 2014, Bryant wrote a letter to Briggs alleging Bryant's belief that he was discriminated against by the School District by being denied a full-time custodial position because of his race (hereafter, the "Racial Discrimination Letter Complaint"). (*See* Bryant's LR 56.1 Statement at ¶65 (additional fact (citing Exhibit S, attached to Gilliam Decl.).) He sent a copy of the Racial Discrimination Letter Complaint to Superintendent Giani. Bryant requested that his Complaint be investigated by someone other than Briggs. (*See id.*) Bryant never participated in any meetings to review this Complaint. (*See* Exhibit P (Letter from Attorney Spencer to Attorney Gilliam (Feb. 20, 2014)("[T]he [School] District is attempting to schedule a meeting with your client so as to provide an opportunity to address and investigate his claims.")); (Letter from Attorney Spencer to Attorney Gilliam (Mar. 27, 2014)(investigation into Bryant's Racial Discrimination Letter Complaint "await[s] meeting[] with Mr. Bryant before resolution")); attached to Shteierman Decl.) No results of any investigation into his Racial Discrimination Letter Complaint were received by Bryant. (*See* Bryant's LR 56.1 Statement at ¶69 (additional fact (no citation provided)).) Nor did Bryant receive any results of the investigation of the Westerbeke Complaint. (*See id.* at¶¶71, 72 (addition facts (citing Bryant 50-H Exam at 55:17-24)); *but see* Exhibit P (Letter from Attorney Spencer to Attorney Gilliam (Mar. 27, 2014)(investigation of Westerbeke Complaint remains pending "awaiting meeting with Mr. Bryant before resolution"), attached to Shteierman Decl.)

Bryant's name remained on the 2013/2014 school year substitute custodians list. He received notification from the School District that his name was included on the 2014/2015 school year substitute custodians list, as well. (*See* Bryant's LR 56.1 Statement at ¶50 (additional fact (citing Exhibit J, attached to Gilliam Decl.), and at¶53 (additional fact (citing Exhibits I & J, attached to Gilliam Decl.).) Nothing in Bryant's personnel file indicates that the School Board has terminated Bryant or disciplined him in any way for alleged sexual harassment. (*See id.* at ¶74 (additional fact (citing Bryant 50-H Exam at 57:4-6)); *see also* Exhibit R, Document, "Eddie Bryant vs. Kim Westerbeke" (two-page document devoid of the phrases "sexual harassment" or "termination"; author unidentified), attached to Gilliam Decl.).)

7. The School District's Employment of African-American Custodians
   During the Relevant Time Period

"During the 2013/2014 school year, the [School] District employed seven African American custodians." (Defendants' LR 56.1 Statement at ¶34.) They constitute 15% of the full-time custodians in the School District, which is similar to the percentage of African-Americans residing in Suffolk County during the same time period. (*See id.*) During that same time period, the School District employed 41 substitute custodians of which 10 where African American, *i.e.*, approximately 24% of the substitute custodial staff. (*See id.* at ¶35.)

B. *Procedural Background*

On September 25, 2014, Bryant filed his Verified Complaint. (*See* ECF No. 1.) It is a six-count action alleging racial discrimination and retaliation, defamation, and negligence.

Bryant brings his racial discrimination claims pursuant to 42 U.S.C. §§ 1981 and 1983. In his **first cause of action**, Bryan alleges the Defendants racially discriminated against him

"with respect to his terms and conditions of employment[,] by wrongfully accusing him of sexual harassment, disciplining him without any justification and investigation, denying him promotions; terminating him; and arbitrarily refusing to contact him to report for available assignments of work . . . ."  (Complaint, First Cause of Action, ¶63.)  In his **second cause of action**, Bryant alleges he was denied a promotion to full-time custodian because he is African-American.  He asserts the School District "had a pattern and practice of blocking African-Americans from advancing to full-time custodian positions or promotions, and denying them these advancements based on race in violation of the Fourteenth Amendment, Equal Protection Clause."  (*Id.*, Second Cause of Action, ¶71.)  His **third cause of action**, raised pursuant to § 1983, is for retaliation.  Bryant asserts that as a result of his "having complained about his disparate treatment and discriminatory terms and conditions of employment based on race" that "from the end of September, 2013, to date, defendant [School] District has not called [Bryant] back to work."  (*Id.*, Third Cause of Action, ¶75.)  Bryant's **fourth cause of action** is based on alleged violation of due process to which he is entitled under the Fourteenth Amendment.  He maintains the [School] District has "denied [him] procedural and substantive due process by accusing him of sexual harassment and terminating him without the benefit of an investigation or an opportunity to clear his name."  (*Id.*, Fourth Cause of Action, ¶82.)

Bryant raises **two state law claims**: one of negligence and one of defamation.  Bryant's negligence claim, his **fifth cause of action**, is based on Briggs' alleged failure to: (1) follow "[School] District policy requiring there to be a thorough investigation before [Bryant] could be subjected to any personnel action" (*id.*, Fifth Cause of Action, ¶87.); and (2) "refer a personnel decision to the superintendent and board before summarily discharging [Bryant] without the

authority to do so" (*id.* at ¶88). Bryant further contends that the Defendant Board did nothing to correct Briggs' alleged unauthorized action. (*See id.* at ¶90.) Bryant's **sixth cause of action**, for defamation, is based on Briggs' allegedly making and publishing "defamatory statements concerning [Bryant's] conduct and moral character which are false and incapable of being proven to be true." (*Id.*, Sixth Cause of Action, ¶95.)

Defendants filed their Answer on November 4, 2014. (*See* ECF No. 7.) Generally, they deny Bryant's allegations, as well as raise seventeen affirmative defenses. (*See id.*) After discovery was conducted, Defendants filed a fully briefed motion for summary judgement (*see* ECF Nos. 28, 29, 30), including Bryant's opposition thereto (*see* ECF No. 29).

III. Discussion

*A. The Applicable Law*

1. <u>Summary Judgment Standard</u>

Summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure is appropriate only where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates the absence of a genuine issue of material fact, and one party's entitlement to judgment as a matter of law. *See Viola v. Philips Med. SYS. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994). In each case, the relevant governing law determines which facts are material; "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). No genuinely triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after

drawing all inferences and resolving all ambiguities in favor of the nonmovant, that no rational jury could find in the nonmovant's favor. *See Chertkova v. Conn. Gen'l Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996).

To defeat a summary judgment motion which is properly supported by affidavits, depositions, or other documentation, the nonmovant must offer similar materials setting forth specific facts showing there is a genuine issue of material fact to be tried. *See Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996). More than a "scintilla of evidence", *see Del. & Hudson Ry. Co. v. Consol. Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (*quoting Anderson*, 477 U.S. at 252) (internal quotation marks omitted), or "some metaphysical doubt as to the material facts," *see Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir. 1993) (*quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)) (internal quotation marks omitted), is required of the nonmovant. Nor can the nonmovant rely on the allegations in his or her pleadings, conclusory statements, or on "mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal citations omitted).

Further, when considering a summary judgment motion, a district court must be "mindful . . . of the underlying standards and burdens of proof," *Pickett v. RTS Helicopter*, 128 F.3d 925, 928 (5th Cir. 1997) (citing *Anderson*, 477 U.S. at 252), because the "evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions." *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988). Where the non-moving party will bear the ultimate burden of proof on an issue at trial, the moving party's burden under Rule 56 will be satisfied if he can point to an absence of evidence to support an

essential element of the nonmovant's claim.  *See id.* at 210-11.  Where a movant who does not carry the underlying burden of proof offers evidence that the nonmovant has failed to establish his claim, the burden shifts to the nonmovant to offer "persuasive evidence that [his] claim is not implausible." *Id*. at 211 (citing *Matsushita*, 475 U.S. at 587).  The nomoving party's evidence is " 'to be believed, and all justifiable inferences are to be drawn in [the nonmovant's] favor.' " *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996)(quoting *Anderson*, 477 U.S. at 255)).

Summary judgment is generally inappropriate "where questions of intent and state of mind are implicated," *Gelb v. Bd. of Elections of the City of N. Y.*, 224 F.3d 149, 157 (2d Cir. 2000), and should thus be granted with caution in employment discrimination cases.  *See Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994); *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 134 (2d Cir. 2000).  Nonetheless, "summary judgment remains available to reject discrimination claims in cases lacking genuine issues of material fact." *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 40 (2d Cir. 1994).  "The summary judgment rule would be rendered sterile . . . if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985).  "[T]he salutary purposes of summary judgment – avoiding protracted, expensive and harassing trials – apply no less to discrimination cases than to commercial or other areas of litigation." *Id*.  "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo*, 22 F.3d at 1224.

2. <u>Local Rule 56.1 Statements</u>

When moving for summary judgment, in addition to complying with the Federal Rule of Civil Procedure 56, the parties must comply with Local Rule 56.1 of the United States District Courts of the Southern and Eastern Districts ("Local Rule 56"). As the Second Circuit has instructed, the Local Rule 56 "requirement is strict". *T.Y. v. N.Y. City Dep't of Educ.*, 584 F.3d 412, 417 (2d Cir. 2009). Among other things, it

> requires that any motion for summary judgment be accompanied by a list of the "material facts as to which the moving party contends there is no genuine issue to be tried." S.D.N.Y. & E.D.N.Y. R. 56.1(a). The nonmoving party must respond to each numbered allegation in the moving party's statement and include, if necessary, a statement of the additional material facts, as to which a genuine issue exists. S.D.N.Y. & E.D.N.Y. R. 56.1(b). In the typical case, failure to respond to a Rule 56.1 statement results in a grant of summary judgment once the court assures itself that Rule 56's other requirements have been met. *T.Y. v. N.Y. City Dep't of Educ.*, 584 F.3d 412, 417-418 (2d Cir. 2009).

*Parris v. Acme Bus Corp.*, 956 F. Supp. 2d 384, 392 (E.D.N.Y. 2013).

Furthermore, Local Rule 56.1(c) instructs: "Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party *will be deemed to be admitted* for purposes of the motion *unless **specifically** controverted* by a corresponding numbered paragraph in the statement required to be served by the opposing party." Local Rule 56.1(c)(italicized and boldface emphasis added); *see also Giannullo v. City of New York*, .322 F.3d 139, 140 (2d Cir. 2003)("If the opposing party then fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted." (citations omitted)). "A nonmovant cannot 'raise a material issue of fact by denying statements which the moving party contends are undisputed for lack of 'knowledge and information'' in part because

'discovery allows the party opposing summary judgment to obtain the facts necessary to determine whether it must admit or deny them.'" *AFL Fresh & Frozen Fruits & Vegetables, Inc. v. De-Mar Food Servs., Inc.*, No. 06-cv-2142, 2007 WL 4302514, at *4 (S.D.N.Y. Dec. 7, 2007)(quoting *Stepheny v. Brooklyn Hebrew School for Special Children*, 356 F. Supp.2d 248, 255 n.4 (E.D.N.Y. 2005)). "Therefore, to the extent that [a nonmovant] ha[s] denied statements for lack of 'knowledge and information,' they will be deemed admitted." *Stepheny*, 356 F. Supp.2d at 255 n.5 (stating it is improper for a nonmovant to deny for lack of "knowledge and information" a Rule 56.1 statement); *see also Taylor & Fulton Packing, LLC v. Marco Intern. Foods, LLC*, No. 09-cv-2614, 2011 WL 6329194, at *4 (E.D.N.Y. Dec. 16, 2011)("Where a nonmovant . . . files a deficient statement, courts frequently deem all supported assertions in the movant's statement admitted and find summary judgment appropriate." (footnote omitted)); *Delphi-Electro Elec. Sys. v. M/V Nedlloyd Europa*, 324 F. Supp.2d 403, 425 n.13 (S.D.N.Y. 2004)(a nonmovant's response that "it has no information to confirm or deny" a statement of material fact is "vague" and "is insufficient to create a genuine issue of fact").

Moreover, to specifically controvert a statement of material fact, a nonmovant is required to do so with specific citation to admissible evidence. *See* Local Rule 56(d); *see also Ezagui v. City of New York*, 726 F. Supp.2d 275, 285 n.8 (noting statements which a nonmovant does "not specifically deny–with citations to supporting evidence–are deemed admitted for purposes of [movant's] summary judgment motion", and collecting cases); *see also Universal Calvary Church v. City of New York*, No. 96-cv-4606, 2000 WL 1745048, *2 n.5 (S.D.N.Y. Nov. 28, 2000). As the Second Circuit has observed, " 'where there are no[] citations *or where the cited materials do not support the factual assertions in the Statements*, the Court is free to disregard

the assertion.'" *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 74 (2d Cir. 2001) (quoting *Watt v. N.Y. Botanical Garden*, No. 98-cv-1095, 2000 WL 193626, at *1 n.1 (S.D.N.Y. Feb. 16, 2000); further citations omitted; emphasis added), *abrogated on other grounds by Gross v. FBL Fin. Servs.*, 557 U.S. 167 (2009). Indeed, "[w]here . . . the record does not support the assertions in a Local Rule 56.1 statement, those assertions should be disregarded and the record reviewed independently." (*Id.* (omitting footnote; citing *Zanghi v. Inc. Village of Old Brookville*, 752 F.2d 42, 47 (2d Cir. 1985)).

### 3.  §§ 1981 & 1983 Claims of Racial Discrimination

Section 1983 provides for an action at law against a "person who, under color of any statute, ordinance, regulation, custom, or usage of any State . . . subjects or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and law." 42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights"; rather, it "merely provides a method for vindicating federal rights elsewhere conferred, such as those conferred by § 1981". *Patterson v. County of Oneida,* 375 F.3d 206, 225 (2d Cir. 2004), *quoting Baker v. McCollan,* 443 U.S. 137, 144 n.3, (1979). Indeed, "the express cause of action for damages created by § 1983 constitutes the *exclusive* federal remedy for violation of the rights guaranteed in § 1981 by state governmental units . . . ." *Jett v. Dall. Indep. Sch. Dist.,* 491 U.S. 701 (1989); *see also Barella v. Vill. of Freeport*, 16 F. Supp.3d 144, 157 (E.D.N.Y. 2014).

Section 1981 provides, in pertinent part, that "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens . . . ." 42 U.S.C. § 1981(a). Claims of disparate treatment pursuant to § 1981 and

§ 1983 are assessed using the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). *See, e.g., St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506 (1993); *United States v. City of New York,* 717 F.3d 72, 83-84 (2d Cir. 2013) (discussing application of *McDonnell Douglas* framework to race discrimination claim); *Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010)(same); *Anderson v. Hertz Corp.*, 507 F. Supp.2d 320, 326-27 (S.D.N.Y. 2007)("Although it was initially established for Title VII claims, the burden-shifting framework described in *McDonnell Douglas* . . . also applies to claims arising under § 1981.").

Under that framework, a plaintiff must first establish a *prima facie* case of discrimination. *See St. Mary's,* 509 U.S. at 506; *Dowrich-Weeks v. Cooper Square Realty, Inc.,* 535 F. App'x 9, 11 (2d Cir. 2013). A plaintiff makes "a *prima facie* case by showing that '(1) at the relevant time the plaintiff was a member of the protected class; (2) the plaintiff was qualified for the job; (3) the plaintiff suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination.'" *Barella*, 16 F. Supp.3d at 158 (quoting *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 76 (2d Cir. 2005)).

If the plaintiff satisfies this initial burden, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions. *See St. Mary's,* 509 U.S. at 506–07. A defendant's burden "is not a particularly steep hurdle." *Hyek v. Field Support Servs.,* 702 F. Supp.2d 84, 93 (E.D.N.Y. 2010). It "is one of production, not persuasion; it can involve no credibility assessment." *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 142 (2000).

If the defendant-employer is able to satisfy that burden, the inquiry shifts back to the plaintiff to demonstrate that the proffered reason is a pretext for discrimination. *See United States v. City of New York,* 717 F.3d at 102. To defeat summary judgment at this stage, "a plaintiff need only show that the defendant was in fact motivated at least in part by the prohibited discriminatory animus." *Henry v. Wyeth Pharm., Inc.,* 616 F.3d 134, 156 (2d Cir. 2010); *see also Bowen-Hooks v. City of New York*, 13 F. Supp.3d 179, 209-10 (E.D.N.Y. 2014). However, a plaintiff pursuing a claimed violation of §1981 or §1983 must show that the discrimination was intentional. *See Tolbert v. Queens College,* 242 F.3d 58, 69 (2d Cir. 2001); *Back v. Hastings on Hudson Union Free Sch. Dist.,* 365 F.3d 107, 118 (2d Cir. 2004).

4. 14th Amendment Equal Protection Claims

"To state a race-based claim under the Equal Protection Clause, a plaintiff must allege that a government actor intentionally discriminated against him on the basis of his race." *Brown v. City of Oneonta, New York*, 221 F.3d 329, 337 (2d Cir. 1999) (citing *Hayden v. County of Nassau*, 180 F.3d 42, 48 (2d Cir. 1999)). The *Brown* Court instructs that a plaintiff may plead Equal Protection intentional discrimination in several ways:

> A plaintiff could point to a law or policy that expressly classifies persons on the basis of race. Or, a plaintiff could identify a facially neutral law or policy that has been applied in an intentionally discriminatory manner. A plaintiff could also allege that a facially neutral statute or policy has an adverse effect and that it was motivated by discriminatory animus.

*Id.* (internal quotations and citations omitted).

5. <u>14th Amendment Due Process Claims</u>

To assert a violation of procedural due process rights, a plaintiff must "first identify a property right, second show that the [School District] has deprived him of that right, and third show that the deprivation was effected without due process." *Local 342, Long Island Pub. Serv. Emps., UMD, ILA, AFL-CIO v. Town Bd. of Huntington*, 31 F.3d 1191, 1194 (2d Cir. 1994)(citation omitted). The threshold issue, therefore, is whether the plaintiff has a constitutionally protected property interest. *See id.* If so, a court then determines: (1) whether the defendant deprived the plaintiff of that interest, and (2) if so, whether the procedures surrounding that deprivation were constitutionally adequate. *See Shakur v. Selsky*, 391 F.3d 106, 118 (2d Cir. 2004). Property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law – rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972).

6. <u>Liability of Municipalities and of Individuals Sued in their Official Capacity;</u>
<u>Qualified Immunity</u>

(a) *Municipalities*

A local governmental entity "may not be held liable under § 1983 for an 'injury inflicted solely by its employees or agents.'" *Gerardi v. Huntington Union Free Sch. Dist.*, 124 F. Supp.3d 206, 225 (E.D.N.Y. 2015) (quoting *Monell v. N.Y. City Dep't of Social Servs.*, 436 U.S. 658, 694 (1978)). Rather, "[p]laintiffs who seek to impose liability on local governments under § 1983 must prove that 'action pursuant to official municipal policy' caused their injury." *Connick v. Thompson*, 563 U.S. 51, 61 (2011)(quoting *Monell*, 436 U.S. at 691)).

The Second Circuit has stated that there are three ways to show that a school district acted under a municipal policy for purposes of § 1983:

> A school district's liability under *Monell* may be premised on any of three theories: (1) that a district employee was acting pursuant to an expressly adopted official policy ["Express Policy Theory"]; (2) that a district employee was acting pursuant to a longstanding practice or custom ["Practice or Custom Theory"]; or (3) that a district employee was acting as a 'final policy-maker' ["Final Policy-Maker Theory"]

*Gerardi*, 124 F. Supp.3d at 225-26 (block-quoting *Hurdle v. Bd. of Educ. Of City of New York*, 113 F. App'x 423, 424-25 (2d Cir. 2004)(summary order; further citation omitted)).

### (b) *Individuals in their Official Capacity*

> "In order to establish individual liability under § 1983, a plaintiff must show (a) that the defendant is a 'person' acting 'under color of state law,' and (b) that the defendant caused the plaintiff to be deprived of a federal right." *Back v. Hastings On Hudson Union Free Sch. Dist.*, 365 F.3d 107, 122 (2d Cir. 2004). Additionally, " '[i]n this Circuit personal involvement of defendants in alleged constitutional deprivation is a prerequisite to an award of damages under § 1983.'" *Id.* (quoting *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977)).

*Id.* at 225; *see also Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (personal involvement of a defendant in an alleged constitutional deprivation "is a prerequisite to an award of damages under § 1983").

### (c) *Qualified Immunity*

> Individual defendants are " 'shielded from liability for civil damages' " under 42 U.S.C. § 1983 if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Wilson v. Layne*, 526 U.S. 603, 609, 119 S. Ct. 1692, 143 L. Ed2d 818

(1999)(quoting *Harlow* [*v. Fitzgerald*], 457 U.S. [800], 818 [(1982)]; *accord Gilles v. Repicky*, 511 F.3d 239, 243 (2d Cir. 2007). "A right is clearly established if (1) the law is defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has recognized the right, and (3) 'a reasonable defendant [would] have understood from the existing law that [his] conduct was unlawful,'" *Anderson v. Recore*, 317 F.3d 194, 197 (2d Cir. 2003)(quoting *Young v. Cnty of Fulton*, 160 F.3d 899, 903 (2d Cir. 1998)).

*Laster v. Mancini*, No. 07-cv-8265, 2013 WL 5405468, at *30 (S.D.N.Y. Sept. 25, 2013)(adopting report and recommendation). "Stated differently, an official is entitled to qualified immunity (1) if the plaintiff has not alleged a violation of a constitutional right, (2) if that right was not clearly established at the time of the conduct, or (3) if the official's actions were not objectively unreasonable in light of clearly established law." *Almonte v. City of Long Beach*, 478 F.3d 100, 109 (2d Cir. 2007) (citing *Harhay v. Town of Ellington Bd. of Educ.*, 323 F.3d 206, at 211-12 (2d Cir. 2003)).

As the Second Circuit has described it, "qualified immunity provides a broad shield," thereby giving officials "'breathing room to make reasonable but mistaken judgments' without fear of potentially disabling liability." *Zalaski v. City of Hartford*, 723 F.3d 382, 389 (2d Cir. 2013) (quoting *Filarsky v. Delia*, — U.S. —, 132 S. Ct. 1657, 1665 (2012)). It "shields public officials from personal liability for official actions, 'unless their conduct violates clearly established constitutional rights of which an objectively reasonable official would have known.'" *Almonte*, 478 F.3d at 108 (quoting *Harhay*, 323 F.3d at 211; further citation omitted).

In making determinations on qualified-immunity claims, the Supreme Court requires a court to determine two matters: (1) whether the facts alleged by the plaintiff are sufficient to make out a violation of a constitutional right; and (2) whether the right at issue was clearly

established at the time of the alleged misconduct. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (discussing *Saucier v. Katz*, 533 U.S. 194 (2001)). It is within the court's discretion to determine which of the two inquiries to decide first. *See id.* at 236.

7. Retaliation Claims

"To make out a prima facie retaliation case, a plaintiff must demonstrate that: '(1) she engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action.'" *Villavicencio v. Gure-Perez*, 56 F. Supp.3d 178, 186-87 (E.D.N.Y. 2014) (quoting *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013)). Because retaliation under § 1981 is analyzed under the same standards as a Title VII retaliation claim, *see id.* at 186 (citing *Little v. N.E. Util. Serv. Co.*, 299 F. App'x 50,52 (2d Cir. 2008); further citation omitted), if a plaintiff makes out a prima facie case, the burden shifts to the defendant to come forward with a legitimate, non-discriminatory reason for its actions. *See id.* at 188 (quoting *Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 845 (2d Cir. 2013)). If the defendant is able to do so, the plaintiff has a renewed burden of producing evidence showing but-for causation which requires "only that the adverse action would not have occurred in the absence of the retaliatory motive." *Kwan*, 737 F.3d at 846 and n.5. "A plaintiff may prove that retaliation was a but-for cause of an adverse employment action by demonstrating weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, nonretaliatory reasons for its action." *Id.* at 846 (quoted in *Villavicencio*, 56 F. Supp.3d at 189).

*B. Application of the Applicable Law to the Instant Case*

At the outset, the Court will provide a framework for its discussion. In Defendants'

Summary Judgment Motion, they have focused their arguments on two different instances: (1)

Bryant's not being hired for two full-time custodial positions (hereafter, the "Non-Hiring

Instances"), and (2) Bryant's not being called to substitute after the September 2013 Westerbeke

Complaint (hereafter, the "Non-Calling Instances"). Since Bryant has not indicated any

disagreement with the Defendants' dual approach (*i.e.*, the Non-Hiring Instances and the Non-

Calling Instances) in his Opposition, he appears to acquiesce to it. For purposes of deciding the

instant Summary Judgment Motion, and since, based on its review of the record, those

categorizations are found to be a fair representation of the two grounds for Bryant's Complaint,

the Court will present its discussion using that rubric.

### 1. The Parties' Local Rule 56.1 Statements

As a predicate to its assessment, the Court observes that "[a] district court has broad

discretion to determine whether to overlook a party's failure to comply with local court rules."

*Holtz*, 258 F.3d at 73 (further citations omitted). And, the Second Circuit has held that "while a

court 'is not required to consider what the parties fail to point out' in their Local Rule 56.1

statements, it may in its discretion opt to 'conduct an assiduous review of the record' even where

one of the parties has failed to file such a statement.'" *Id.* (quoting *Monahan v. N.Y. City Dep't

of Corr.*, 214 F.3d 275, 292 (2d Cir. 2000); further citations omitted).

In the instant case and given the discretion afforded to it, in light of the issue

appropriately raised by the Defendants as to the broad-based inadequacies of Bryant's LR 56.1

Statement (*see* Defendants' Reply Memo. at 1-2, n.1, 6, 7), the Court has carefully compared the

parties' LR 56.1 Statements, the corresponding citations to the record, as well as conducted an assiduous review of the record as a whole. Bryant's counter-statements fall into two categories: those statements (a) as to which he asserts lack of sufficient information and knowledge (hereafter, the "Lack Information Statements"), and (b) that he does not specifically controvert or that are not supported by the cited record (hereafter, the "Non-Controverted Statements"). The Court will address each in turn.[4]

### (a)  *The Lack Information Statements*

Bryant asserts he "lacks sufficient information and knowledge to admit or deny" the following paragraphs:

---

[4]  The Court notes that Bryant asserted 39 paragraphs of alleged additional material facts as to which he contends there exists genuine issues to be tried. If necessary, a party opposing a summary judgment motion, as Bryant is doing here, may submit "additional paragraphs containing a separate, short and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried." Local Rule 56.1(b). Having already been prompted to examine Bryant's LR 56.1 Statements in response to the Defendants' LR 56.1 Statements, the Court – in its discretion – has also examined the Additional Paragraphs, the referenced citations where provided, and the record as a whole. In that regard, the Court has already stated:

> [W]hen considering a summary judgment motion, a district court must be "mindful . . . of the underlying standards and burdens of proof," *Pickett v. RTS Helicopter*, 128 F.3d 925, 928 (5th Cir. 1997) (citing *Anderson*, 477 U.S. at 252), because the "evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions." *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988).

*See supra* at p. 11. Mindful of the underlying standards and burdens of proof as to Bryant's causes of action, the additional paragraphs have not raised material facts in dispute which would preclude the granting of summary judgment in the Defendants' favor.

| ¶ Number | Content of ¶, generally |
|---|---|
| 4 | Addressing the posting of two full-time custodial positions from Bryant's Start Date to September 23, 2013 (*i.e.*, the First Posting and the Second Posting). |
| 5 | Addressing that the persons offered the jobs for the First Posting and the Second Posting had more substitute custodial experience in the School District than did Bryant. |
| 8 | Addressing the Second Posting for which Bryant applied. |
| 9 | Addressing Bryant being one of 40 applicants who was granted a second interview for the Second Posting. |
| 10 | Addressing the School District's use of score sheets in interviewing the final four custodial candidates, with the scores ranging from a low of 1 to a high of 5. |
| 11 | Addressing the chosen candidate for the Second Posting and the scores he received. |
| 12 | Addressing the scores Bryant received from his second interview. |
| 13 | Addressing the chosen candidate's longer duration of being a substitute custodian versus Bryant's lesser time being a substitute custodian and that Bryant was "fine" with the School District's choice of the other candidate. |
| 22 | Addressing Westerbeke's receipt of the Note on a Monday and her subsequent reporting of the Note to the school's head custodian, who then reported it to the school's principal. |
| 23 | Addressing the principal meeting with Westerbeke and asking Westerbeke to write a statement about her interaction with Bryant. |
| 24 | A full quotation of Westerbeke's statement. |
| 25 | Addressing the principal drafting a memo to Briggs, to which she attached Westerbeke's statement and the Note. |
| 26 | Addressing Briggs receiving the Westerbeke Complaint later that day; Briggs using the number Bryant provided on the Note to call Bryant; Bryant answering the call; and Briggs setting up a meeting with Bryant for the next morning. |
| 31 | Addressing Briggs meeting Westerbeke after his meeting with Bryant and Westerbeke relaying the same version of the encounter as she originally reported it to the principal. |

| ¶ Number | Content of ¶, generally |
|---|---|
| 34 | Addressing the School District's 2013/204 employment of seven custodians who are African-American, which is 15% of the School District's full-time custodial staff and is representative of the African-American population in the U.S. and, more specifically, Suffolk County. |
| 35 | Addressing the School District's 2013/2014 employment of 10 African-American substitute custodians, who comprised more than 24% of the School District's substitute custodial staff and was representative of the African-American population in Suffolk County. |

Since, after the close of discovery, Bryant has denied the above-identified statements for lack of "sufficient information and knowledge" and that is not sufficient to create a genuine issue of fact, the Court deems the facts stated in Defendants' ¶¶ 4-5, 8-13, 22–26, 31, and 34-35 of their LR 56.1 Statement to be admitted.  *See AFL Fresh & Frozen*, 2007 WL 4302514, at *4; *see also Stepheny*, 356 F. Supp.2d at 255 n.5,  *Delphi-Electro Elec. Sys.*, 324 F. Supp.2d at 425 n.13.

(b)  *The Non-Controverted Statements*

As to the Defendants' remaining Statements, they are deemed admitted since Bryant has not specifically controverted the material facts stated by the Defendants as required by the Local Rules.  *See* Local Rules 56.1(c) & (d); *see also* Fed. R. Civ. P. 56(e).  The Court elucidates below.

**Paragraph 7**:  The Defendants' ¶7 addressed two facts: (1) that Bryant did not complain about discrimination after his unsuccessful first attempt at securing a full-time custodial position, and (2) that he did not file any of the School District's complaint forms in connection with that unsuccessful attempt.  In disputing ¶7, Bryant counter-states he complained to fellow African-American co-workers (citing his 50-H Exam).  That counter-statement, however, fails to address the second portion of the Defendants' statement that Bryant "did not submit any complaint forms

following his unsuccessful application in December, 2012."[5] Since Bryant's non-response does

not specifically controvert the second material fact of ¶7, as stated in the Defendants' LR 56.1

Statement, it is deems admitted for purposes of the subject Summary Judgment Motion.[6] *See*

*T.Y.*, 584 F.3d at 418.

      **Paragraph 14**: Similarly, in Defendants' ¶14, as to the Second Posting for which Bryant

applied, the Defendants stated two facts: (1) that Bryant did not make any Racial Discrimination

Letter Complaints *to the District*, and (2) that he did not avail himself of the School Districts's

Complaint Procedure Form. Bryant's corresponding counter-statement reads: "Deny. Plaintiff

complained *to fellow employees* about the [School] District's discriminatory hiring practices."

(Citing Bryant 50-H Exam at 42:6-24, 51:22-25 (emphasis added).). The alleged denial does not

address the stated facts, let alone specifically controvert them. (*See* Local Rule 56(c).) Nor does

the citation to the Bryant 50-H Exam demonstrate a genuine issue of dispute regarding Bryant's

not complaining of racial discrimination *to the School District* and not availing himself of the

School District's Complaint Procedure Form. *See Archie Comic Publ'ns, Inc. v. DeCario*, 258 F.

Supp.2d 315, 318 (S.D.N.Y. 2003)(nonmovant must cite admissible evidence in support of his

contention that there is a genuine issue for trial); *see also, generally, Sadler v. Moran Towing*

---

[5] *Cf.*, Bryant Depo.:

    Q:    Did you ever file any type of grievance with the school
            district?
    A:    No.

Bryant Depo. at 42:10-12.

[6] Moreover, whether Bryant complained to fellow African-America co-workers is not
relevant to the present issues under consideration.

*Corp.*, 204 F. Supp.2d 695, 696 (S.D.N.Y. 2002)(non-movant should respond to movant's Rule 56.1 statement point-by-point and cite to evidence in support of contention that facts are disputed). Therefore, the Defendants' ¶14 is deemed to be admitted.

**Paragraph 17**: The Defendants' ¶17 addresses Bryant: (1) approaching Westerbeke on September 20, 2013, (2) after a two-to-three minute conversation, asking Westerbeke whether she was open-minded, (3) asking Westerbeke whether she wanted to make a video after Westerbeke responded that she was open-minded, and (4) having first met Westerbeke four days prior to this exchange. Despite characterizing his response as a denial, Bryant proceeds to admit some of the Defendants' material facts in his ¶17 counter-statement. "Plaintiff approached . . . Westerbeke [fact (1)] regarding making a video [fact (3)] . . ." (Bryant's LR 56.1 Statement at ¶17.) He continued with his explanation as to why he initiated the conversation, *i.e.*, "for his church project . . ." (*Id.*) He cites to his 50-H Exam in support of his counter-statement. (*See* Bryant 50-H Exam at 19, 20:6-13.) However, neither Bryant's rational for initiating the conversation nor the portion of the record he cites controvert – specifically or otherwise – Defendants' stated material facts. Furthermore, in his next statement, Bryant admits fact (2). (*See* Bryant's LR 56.1 Statement ¶18 (Bryant "only spoke with Ms. Westerbeke for two to three minutes" (citing Bryant 50-H Exam at 18:16-24; 19:3-4).) There is nothing in Bryant's ¶17 counter-statement regarding the Defendants' "open-minded" statement.

Assuming his denial is Bryant's attempt to dispute of the Defendants' ¶17 LR 56.1 Statement, that attempt is unavailing. As already observed, as to facts (1) and (3), by his own words, Bryant admits a portion of Defendants' material facts. His label to the contrary should not morph those admissions into disputed material facts, as to do so would elevate form over

substance and defeat the purpose of LR 56.1 Statements. The same logic applies to fact (4), which Bryant admits in his following LR 56.1 paragraph. Hence, facts (1), (3), (4), not having been specifically controverted, are deemed admitted. Since Bryant has not addressed fact (2), *i.e.*, Westerbeke's open-mindedness, that fact has not been controverted, and is, therefore, deemed admitted. (*See* Local Rule 56.1(c).)

**Paragraph 18**: While Bryant denies the Defendants' LR 56.1 Statement ¶18, a fair reading of his alleged denial demonstrates there is no dispute. In ¶18 of their LR 56.1 Statement, the Defendants state, "Mr. Bryant did not explain to Ms. Westerbeke why he wanted to make the video, nor did he inform her of his affiliation with his church." In comparison, in ¶18 of his LR 56.1 counter-statement, Bryant states, "Deny. During the brief conversation with Ms. Westerbeke, Mr. Bryant did not have an opportunity to explain the church project and intended on speaking to her about it later, to further explain the subject matter of the video, but he never had the opportunity to do so." That is, Bryant does not dispute failing to explain the purpose of the video; instead, he asserts *why* he did not explain the purpose of the video, *i.e.*, he did not have the time to do so. In this instance, Bryant's explanation of his inactions, *which he does not deny*, does not create a factual dispute. Nor does his explanation, specifically controvert the facts stated in Defendants' ¶18. Accordingly, the Defendants' ¶18 material facts will be deemed to be admitted for purposes of their Summary Judgment Motion.

**Paragraph 28**: In ¶ 28, Defendants succinctly state: "Mr. Bryant met with Mr. Briggs the following morning, in Mr. Briggs' Office." In response, Bryant counters: "Deny. Mr. Bryant reported to Mr. Briggs' office, and there was no meeting, only Mr. Briggs's accusation that Mr. Bryant had sexually harassed Ms. Westerbeke and that he was being terminated." (Bryant's LR

56.1 Statement at ¶28 (citing Bryant 50-H Exam at 30:4-22).) Bryant's counter-statement fails to establish a material fact in dispute for several reasons. To begin, drawing all inferences in Bryant's favor, Bryant is relying on semantics to create a disputed material fact. In this instance, having "met" with Briggs and having "reported" to Briggs' office connote the same thing, *to wit*, Briggs and Bryant coming into each other's presence.[7] Whether the encounter was one-sided does not negate the occurrence of the meeting itself. Moreover, Bryant's cited evidence does not support his counter-statement that there was no meeting. (*See id.* at 30:4-22.) In fact, the record established Bryant did meet Briggs in his office:

> Q:  The next morning did you go to meet with Mr. Briggs?
> A:  Yes, I did.
> Q:  That was at 8 a.m.
> A:  Yes, I did.
> Q:  Where was that, was that in his office?
> A:  In his office.

(*Id.* at 29:13-22.[8]) Thus, the record demonstrates that ¶28 of the Defendants' LR56.1 Statement has not been specifically controverted. As such, that statement of material fact is deemed to be admitted for purposes of deciding the instant Summary Judgment Motion.

**Paragraph 29**: Again citing to his 50-H Exam (at 30:4-22), Bryant disputes the Defendants' ¶ 29 statement of material fact that when he met Briggs, "Briggs advised Mr. Bryant that he was forwarded a complaint made by Ms. Westerbeke. Mr. Briggs advised Mr. Bryant that he was in possession of the [Note] left for Ms. Westerbeke and had used the number provided therein to contact him." (Defendants' LR 56.1 Statement ¶29 (citations omitted).) However, the

---

[7]  *See* definition of "meet" (v)("come into the presence of"), available at www.dictionary.com/browse/meet.

[8]  *See also* Bryant Depo. 16:4-17:18.

cited testimony does not address that Briggs received a complaint from Westerbeke. Nor does it controvert that Briggs had the Note and that he used the phone number in the Note to contact Bryant. Indeed, Bryant testified, *inter alia*, that Briggs told him, " 'That's where I got your number from, from the [N]ote.' I said 'Okay.' " (Bryant 50-H Exam at 30:7-8.) Bryant's cited testimony does not support his dispute with the Defendants' ¶29 Statement. Hence, that statement is deemed admitted.

**Paragraph 30**: Defendants' ¶30 regards Bryant's not denying writing the Note and his not "provid[ing] any explanation as to why the [N]ote was written or why he had asked Ms. Wetserbeke to make a video in the first place." Citing his 50-H Exam (at 30:4-22), Bryant denies that statement, asserting he was never provided an opportunity to do so. (Bryant's LR 56.1 Statement at ¶30.) However, the evidence upon which Bryant relies to support that denial does not create a disputed fact. Rather than contradict the Defendants' ¶30 Statement, the cited 50-H Exam testimony aligns with and elaborates upon it, with Bryant providing an explanation for his non-responsiveness during his meeting with Briggs. (*See also* Bryant 50-H Exam at 31:5-10.) As a result, ¶30 is deemed admitted for purposes of deciding the instant Summary Judgment Motion.

**Paragraph 32**: In ¶ 32, the Defendants stated that Briggs contacted Bryant to set up a meeting to conclude Briggs' investigation into the Westerbeke Complaint. Despite repeated attempts, Bryant and Briggs never met again. (*See* Defendants' LR 56.1 Statement (citing Briggs' Affidavit and Bryant 50-H Exam at 36:11-16).) Denying that statement, Bryant counter-states that he "was awaiting receipt of his personnel file" before he would have any meeting with Briggs. (*See* Bryant's LR 56.1 Statement ¶32 (citing Bryant 50-H Exam at 32, 37; and Bryant

Depo. at 63-64).)  The evidence Bryant relies on to support *why* he did not agree to having a

subsequent meeting does not create a dispute about no subsequent meeting occurring.  Bryant is

attempting to create a disputed material fact where, based on the record, none exists.  Therefore,

Defendants' ¶32 is deemed admitted.

**Paragraph 33**:  In ¶33, and relying on Briggs' Affidavit, the Defendants state as a

material fact that Bryant was "never removed from the [School] District's substitute list" because

Briggs was unable to conclude his investigation of the Westerbeke Complaint.  Bryant disputes

that fact, citing to his 50-H Exam (at 30:5-14, 37:4-9, 57:4-6).  He counters that he was

terminated by Briggs, without Briggs having the authority to do so.  (*See* Bryant's LR 56.1

Statement ¶33.)  He further states that he "was never called to work again and the head custodian

was told by Briggs not to call [Bryant],[9] although the Board never sent him a termination

letter."

While the record is replete with Bryant's contention that he was fired,[10] the material fact

at issue in the Defendants' ¶33 is not termination, but Bryant's (1) non-removal from the

substitute custodial list, because (2) Briggs was unable to finish the Westerbeke Complaint

investigation.  Contrary to Bryant's implicit contention that the head custodian's comment

creates a dispute as to the ¶33 statement, it does not.  Indeed, the alleged comment is not

inconsistent with the Defendants' position.  Moreover, assuming the head custodian did tell

Bryant about the prohibition on calling him, there is no evidence in the summary judgment

---

[9]  (*See also* Bryant Depo. at 22:12-16.)

[10]  (*See, e.g., id.* at 22:7-13; *see also* Letter from Harriet A. Gilliam, Esq., to Trustee
Picini and Trustees (Oct. 15, 2013)(attached as Exhibit P to Shteierman Decl.); Racial
Discrimination Letter Complaint.)

record that the head custodian also told Bryant that the reason for that prohibition was because

Bryant was terminated.  Further, in his Racial Discrimination Letter Complaint, Bryant states,

*inter alia*: "I never received any notice from the Board of Education that I was fired[,] and

instead there was a letter sent telling me that I remain on the active list."  (Exhibit S, attached to

Shteierman Decl.[11])  Hence, Bryant's own words support – not controvert – the subject material

facts.  Accordingly, the material facts stated in Defendants' LR 56.1 Statement at ¶33 will be

deemed to be admitted for purposes of the subject Summary Judgment Motion.

* * * * *

In sum, the Defendants' 35 enumerated LR 56.1 Statements have been admitted or

deemed admitted for purposes of deciding the instant Summary Judgment Motion.

(2) <u>Bryant's §§ 1981 and 1983 Racial Discrimination Claims</u>

(a) *The Defendants' Position.*

The Defendants first argue that Bryant cannot make out §§ 1981 and 1983 claims as the

record is devoid of facts sufficient to sustain his race discrimination claims.[12]  More particularly,

for both the Non-Hiring Instances and the Non-Calling Instances, the Defendants maintain they

have legitimate, non-discriminatory reasons for their actions.  Specifically, for the Non-Hiring

---

[11]  In his Racial Discrimination Letter Complaint, Bryant continues by stating, "However, I haven't been called for work sent [*sic*] the end of September, 2013."

[12]  From their Memorandum of Law in Support of Motion for Summary Judgment, it appears that the Defendants have assumed that Bryant has made out a prima facie case of discrimination as their arguments proceed directly to arguing legitimate, non-discriminatory reasons for their actions.  (*See* Defendants' Memo. at 10-12 (ECF No. 28).)  The Court will make the same assumption.

Instances, as to both the First Posting and the Second Posting, the Defendants hired other candidates who had been substitute custodians with the School District for longer periods of time than Bryant. Further, as to the Second Posting, the ultimate hiree received better scores than Bryant in the second interview. (*See* Defendants' Support Memo at 10.) The Defendants also point out that Bryant did not complain about the School District's hiring practices until four months *after* the September 2013 Westerbeke Complaint, which was more than two years after Bryant applied for the First Posting and nine months after he applied for the Second Posting. (*See id.* at 11.) The Defendants also highlight evidence that 14% of the full-time custodial staff and nearly 25% of the substitute custodial staff for the School District is comprised of African-American persons, which is greater than the 8.3% African-American population of Suffolk County. (*See id.*) They argue these demographics further evince non-discriminatory hiring practices. (*See id.*) The combination of this evidence well-establishes the Defendants' legitimate, non-discriminatory reasons for not hiring Bryant to a full-time custodial job.

As to the Non-Calling Instances, the Defendants contend the evidence supports their legitimate, non-discriminatory reason for not calling Bryant to substitute after the Westerbeke Complaint, *to wit*, Briggs' need to ensure the safety of all employees pending further investigate of that Complaint, and not Bryant's race. (*See id.* at 12; *see also* Briggs Affidavit at ¶18.) They assert the evidence supports their position that the School District was unable to complete its investigation because Bryant did not participate in any further meetings designed to meet that goal. Having met their burden-shifting obligation, the Defendants argue Bryant has offered no evidence which will refute their legitimate, non-discriminatory reasons.

(b) *Bryant's Response.*

In response (as to *all* of the Defendants' points), Bryant's arguments focus on the Non-Calling Incidents. (*See* Bryant's Opp'n at 6-10.) As the Court understands Bryant's position regarding his §§ 1981 and 1983 claims related to the Non-Calling Incidents, he contends he was racially discriminated against when he was no longer called into work after the Westerbeke Complaint was lodged against him, but which Complaint was not properly investigated in accordance with School District policy. Therefore, his argument goes, he suffered a *de facto* termination and this alleged termination was done without the requisite Board approval. (*See* Bryant's Opp'n at 7.)

(c-1) *Regarding the Non-Hiring Incidents.*

The Defendants have met their burden of production which supports a legitimate, nondiscriminatory reason for not hiring Bryant. Indeed, they offer two, related reasons, *i.e.*, the respective hirees had more custodial experience with the School District, and the hiree for the Second Posting performed better in the second round of interviews. That causes the burden to shift back to Bryant to demonstrate that the proffered reasons are pretextual. Even assuming the Court could construe any of Bryant's Opposition arguments as addressing the Non-Hiring Incidents, Bryant has not pointed to any evidence that supports pretext on the Defendants' part. In the absence of such evidence, no rational fact-finder could find in Bryant's favor in this regard.

(c-2) *Regarding the Non-Calling Incidents.*

The Defendants have met their burden of production which supports a legitimate, nondiscriminatory reason for not calling Bryant after the Westerbeke Complaint, *i.e.*, Briggs not being able to complete his investigation of the Complaint notwithstanding attempts to do so.

(*See* Briggs Affidavit; *see also* Exhibit P (correspondence between the Defendants' counsel and Bryant's counsel indicating the necessity of Bryant's participation to complete investigation of complaints), attached to Shteierman Decl.) That causes the burden to shift back to Bryant to show the Defendants' proffered reason is a pretext. However, Bryant has not presented any evidence which would demonstrate that the Defendants were motivated, at least in part, by any intentional prohibited discrimination. Even assuming that Bryant was immediately terminated (as he originally contended) or was de facto terminated (the position he takes in his Opposition), he has failed to present any evidence which would overcome the Defendants' articulation of a legitimate, non-discriminatory reason for its actions which would show the Defendants were motivated, even in part, by intentional, prohibited discrimination. Even accepting Bryant's contentions of "procedural irregularities" regarding Briggs' investigation of the Westerbeke Complaint, those contention – without more – are not enough to implicate Bryant's race was a factor in the alleged irregularities. *See Weinstock v. Columbia University*, 224 F.3d 33, 45 (2d Cir. 2000)(finding plaintiff's gender did not play a role in any alleged procedural irregularities). Relatedly, to the extent Bryant attempts to support his "procedural irregularities" argument with the allegation that he was precluded from giving his side of the story, that attempt is unavailing since (1) the summary judgment record demonstrates that Bryant rebuffed Briggs' and the School District's overtures to meet with Briggs so that the investigation could be completed, and (2) Bryant's reliance on his request for his personnel file as the basis for not meeting with Briggs a second time does not evidence any racial animus. Hence, since Bryant's conclusory allegations, without admissible evidence to support them, are insufficient to show the requisite racial animus motivation, no rational fact-finder could find in Bryant's favor on his Non-Calling claims.

(3) <u>Bryant's 14th Amendment Equal Protection Claim</u>

     (a) *The Defendants' Position.*

The Defendants argue that Bryant's 14th Amendment Equal Protection claim must fail

since he "has not established the existence of a policy, custom or practice of intentional

discrimination on behalf of the [School] District or its policy makers." (Defendants' Memo. In

Supp. at 16 (citing *General Bldgs. Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 391

(1982)).) They also contend that Bryant has failed to identify anyone who was "similarly situated

in all material respects" to him. (*Id.* at 17 (citing *Weixel v. Bd. of Educ. of the City of N.Y.*, 287

F.3d 138 (2d Cir. 2002).) As such, they posit, Bryant cannot establish an equal protection claim.

(*See id.* (citing *Harlan Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001)(equal

protection claim requires showing (1) plaintiff treated differently from similarly situated

individuals, and (2) such differential treatment based on, *inter alia*, impermissible consideration

of race)).)

     (b) *Bryant's Response.*

The extent of Bryant's Equal Protection argument is that the School District's hiring

practices deprived him of equal protection. (Bryant's Opp'n at 8.) In support of this conclusory

statement, Bryant cites to his Racial Discrimination Letter Complaint. (*Id.* (citing Exhibit S,

attached to Gilliam Decl.).) His theory of Equal Protection deprivation is not clear.

     (c) *Regarding Bryant's 14th Amendment Equal Protection Claim.*

On the summary judgment record presented, Bryant would be unable to make a prima

facie showing of an Equal Protection claim. First, he has not presented admissible evidence of

other similarly situated individuals who were treated differently than him. His allegations that

unnamed Caucasian substitute custodians where hired as full-time custodians is, simply, insufficient.  In any event, Bryant is deemed to have admitted (1) that the hirees for the First Posting and the Second Posting each had more experience working for the School District, and (2) that the hiree for the Second Posting scored better on the second round of interviews than did Bryant.  (*See supra* Part III(B)(1); *see also* Defendants' LR 56.1 Statement at ¶¶5, 10-12.)  In other words, those hirees were not similarly situated to Bryant.  Second, the Defendants' reasons for making their hiring decisions as to the First and Second Postings, which they assert were legitimate, non-discriminatory reasons, have been deemed admitted by Bryant.  (*See supra* Part III(B)(1); *see also* Defendants' LR 56.1 Statement ¶¶4-5, 9-13)  As a result, Bryant cannot make the requisite showing of differential treatment based on consideration of race.  Hence, on the summary judgment record presented, no rational fact-finder could find in Bryant's favor on his Equal Protection claim.

(4)  Bryant's 14th Amendment Due Process Claim

(a)  *Procedural Due Process*

(i)  The Defendants' Position

Beginning with the premise that in order to bring a 14th Amendment Due Process claim, a plaintiff must have a property interest in his employment such that it is a "legitimate claim of entitlement to it," (Defendants' Memo. In Supp. at 18), the Defendants take the position that Bryant has no property interest in employment as he was a substitute custodian.  (*See id.* (citing *Rosendale v. Mahoney*, 496 F. App'x 120 (2d Cir. 2012).)  In *Rosendale*, based on New York law, a per diem substitute teacher was found to have no protected property interest in that position.  *See id.* at 122.  Analogizing to the substitute teacher position, the Defendants assert

that, as a substitute custodian, Bryant also does not have a protected property interest in his position with the School District.  (*See* Defendants' Memo. In Supp. at 18)  Thus, in the absence of a protected property interest, Bryant's procedural due process claim must fail.  (*See id.*)

The Defendants make the further argument that, even assuming, *arguendo*, Bryant possessed some form of property interest in his employment, "procedural due process requires only that the state afford a party threatened with a deprivation of property, a process involving pre-deprivation notice and access to a tribunal in which the merits of the deprivation may be fairly challenged."  (*Id.* (citing *Chase Group Alliance, LLC v. City of N.Y. Dep't of Fin.*, 620 F.3d 146, 151-52 (2d Cir. 2010); *Leroy v. N.Y. City Bd. of Elections*, 793 F. Supp.2d 533, 540-41 (E.D.N.Y. 2011).)  They contend Bryant was notified of both the Westerbeke Complaint and that he would not be called to substitute pending further investigation of the Complaint.  (*See id.* (citing Bryant Depo. at 22:2-4; Bryant 50-H Exam at 30:9-11; Briggs Affidavit).)  The Defendants further assert that Bryant was free to challenge removal from the substitute list by bringing an Article 78 proceeding, which would have provided Bryant a meaningful post-deprivation remedy.  (*See id.* (citing *Ziebell v. City of Milford*, No. 3:08-cv-286, 2008 WL 4371971 (D. Conn. Sept. 18, 2008).)

      (ii)  Bryant's Response.

Bryant alleges deprivation of procedural due process based on the School District's failure to investigate the Westerbeke Complaint, resulting in a "de facto termination by the [School] District and its Board."  (*See* Bryant's Opp'n at 8.)  He argues that the School District "failed to adhere to its policies to investigate the allegations against [him] and to present the matter to the defendant Supervisor [Giani] and Board."  (Bryant's Opp'n at 7.)  That alleged

deviation from procedural regularity is the basis for his due process argument.  (*See id.* at 7-8.[13])

(iii)  Regarding Bryant's Procedural Due Process Claim.

Here, Bryant cannot meet the requisite threshold.  The record evidence demonstrates Bryant was a substitute custodian.  (*See, e.g.*, Exhibit L, attached to Gilliam Decl.)  "An employee has a property interest in his or her position only where he or she cannot be discharged in the absence of good cause."  *Roche v. O'Meara*, 175 F. Supp.2d 276, 283 (D. Conn. 2001) (citing *Moffit v. Town of Brookfield*, 950 F.2d 880 (2d Cir. 1991); *Stein v. Bd. of the City of N.Y.*, 792 F.2d 13 (2d Cir. 1986)).  Here, Bryant has not presented any evidence that he had a property interest in his substitute custodial position (*e.g.*, a collective bargaining agreement, a contract, or an engagement letter which would vest a right or interest that requires due process protection).  Nor has Bryant pointed the Court to any authority which would support that conclusion, and the Court has found none.  In the absence of any evidence supporting this threshold requirement, no rational fact-finder could find in Bryant's favor on his procedural due process claim.

Assuming, *arguendo*, that Bryant did have a property interest in his substitute custodial position, the record is devoid of any non-conclusory evidence that Bryant was deprived due process as to the investigation.  *See Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 570 n.7 (1972) ("it is fundamental that . . . due process requires that when a State seeks to terminate (a protected) interest . . . , it must afford 'notice and opportunity for hearing appropriate to the nature of the case' before the termination becomes effective") (quoting *Bell v. Burson*, 402 U.S. 535, 542 (1971)).  Indeed, here, the opposite is true.  In addition to the Briggs' Affidavit and

---

[13]  Having reviewed Bryant's Opposition, it appears he has abandoned his position that he has a property interest in "his good name and reputation."  (*See* Complaint at ¶79; *cf.*, Opposition *in toto*.)

correspondence between Bryant's counsel and the Defendants' counsel (*see* Exhibit P, attached

to Shteierman Decl. (letters)), evidence submitted by Bryant demonstrates that Briggs provided

Bryant the opportunity for a continued hearing by trying several times to meet with Bryant to

conclude the investigation of the Westerbeke Complaint. (*See* Exhibit R at 2 ("Wednesday

October 30, 2013" entries; "Other facts" entries; *see also* Bryant Depo. at 65:18-66:25; Bryant

50-H Exam at 32:2-14, 33:9-36:16.) Yet Bryant *chose* not to participate in any further

investigation asserting his desire to first receive his personnel file. (*See* Bryant Depo. at 66:20-

25, 69:19-23.) While the Court can appreciate Bryant's preference to have his personnel file, he

has not cited any authority supporting his implicit position that receipt of the file was a

prerequisite to attending additional investigatory meetings. Further, Bryant's *choice* to not attend

any further investigatory meetings undermines his position that – after initially being unable to

provide any explanation for his exchange with Westerbeke because of shock – he was never

afforded the opportunity to provide a full explanation for his inquires of Westerbeke.

Accordingly, on the present record, no rational fact-finder could find in Bryant's favor on his due

process deprivation claim.

       (b) *Substantive Due Process*

       *Regarding Bryant's Substantive Due Process Claim.*

       The Defendants posit that Bryant's claim of substantive due process is subsumed by his

other constitutional claims. (*See* Defendants' Memo. In Supp. at 19.) Bryant does not make any

arguments in support of his substantive due process claim. (*See* Bryant's Opp'n *in toto*.) Bryant,

having failed to pursue this theory of his due process claim, is deemed to have waived it. *See,

e.g., Johannes Baumgartner Wirtschafts-Und Vermogensberatung GmbH v. Salzman*, 969 F.

Supp.2d 278, 290 (E.D.N.Y. 2013)("a Court need not entertain an argument that was not briefed")(citing *Fidelity Bank, Nat'l Ass'n v. Avrutick*, 740 F. Supp. 222, 228 n.6 (S.D.N.Y. 1990)).

    (5) <u>Municipal Liability</u>

        (a) *The Defendants' Position.*

Citing to the Board's Anti-Discrimination and Anti-Harassment policy (*see* Exhibit F, attached to Shteierman Decl.), Defendants contend Bryant cannot show a municipal policy under the first theory of municipal liability, the so-called Express Policy Theory, since the School District's expressly adopted official policy condemns racial discrimination. (*See* Defendants' Memo. In Supp. at 13.) As to the second theory, the Practice or Custom Theory, regarding a longstanding practice or custom, Defendants argue that Bryant's only evidence in this regard is the School District's non-hiring of him, which – even if, *arguendo*, discriminatory – does not evince a "'widespread or persistent' practice of racial discrimination." (*Id.* at 14 (citing *Carter v. Cnty. of Suffolk*, No. 12-cv-1191, 2013 WL 6224283, at *4 (E.D.N.Y. Dec. 2, 2013)).) In any event, the evidence of the School District's hiring demonstrates an absence of widespread or persistent racially discriminatory hiring practices. (*Id.* (citing Briggs Affidavit.) In addition, based on the premise that, as a substitute custodian, Bryant had no "protected property interest in his employment," the Defendants contend that, in such an instance, the "mere failure to follow the [School] District's policy cannot form the basis for a procedural due process claim." (Defendants' Reply at 7.) Hence, the argument continues, with no condition precedent for municipal liability, Bryant's *Monell* claim against the School District must fail. (*See id.*)

Addressing the third theory, the Final Policy-Maker Theory – showing a district employee acting as a final policy-maker – the Defendants state that, while "the identification of those officials whose decisions represent the official policy of the local governmental unit is itself a legal question to be resolved by the trial judge before the case is submitted to the jury" (*id.* (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989); *Jeffes v. Barnes*, 208 F.3d 49, 57 (2d Cir. 2000)), it is a plaintiff's burden to establish as a matter of law that a given official represents official policy. (*Id.* (citing *Jeffes*, 208 F.3d at 57).) They argue that, as to the Trustees, (1) there are only conclusory allegations in Bryant's Complaint that the Trustees were involved in the instant matter, and (2) there is absolutely no evidence to support those bald allegations. (*See id.* at 15.) Regarding Superintendent Giani, the Defendants posit (1) there are no allegations against him in Bryant's Complaint, and (2) the record is devoid of any evidence that he was involved in the occurrences of which Bryant complains. (*See id.*) Finally, with respect to Briggs, and relying on Bryant's acknowledgment that the Board maintains control over the School District's hiring and firing policies (*see id.* (citing Complaint at ¶ 38)), the Defendants contend that this acknowledgment requires a corresponding acknowledgment that "any unilateral decision allegedly made by . . . Briggs could have been overruled by the [School] District[,] . . .[which] establish[es] that Briggs was not vested with decision-making authority sufficient to tie his actions to those of the District." (*Id.* at 15-16.) As a result, Bryant "has failed to establish that the actions of the individually named defendants were acting 'pursuant to official municipal policy' when the decision not to hire Mr. Bryant to a full time position and to cease calling him from the substitute list were made." (*Id.* at 16.)

(b) *Bryant's Response.*

Curiously, despite the Defendants addressing each of the three theories a plaintiff can use to show that a school district acted under a municipal policy for purposes of § 1983, citing to relevant case law, and arguing why the facts of this case do not warrant finding in Bryant's favor under any of those theories, Bryant, nonetheless, contends "Defendants erroneously discount all of the recognized basis for Monell [*sic*] claims." (Bryant's Opp'n at 9.)  Despite asserting he has identified "at least four types of actions by the defendants which clearly trigger the imposition of municipal liability" (*id.*), *to wit*, (1) Briggs' alleged unilateral termination of Bryant, (2) the Board's ignoring Bryant's request for an investigation, (3) the Board's refusing to investigate Briggs' actions; and (4) the supposed conflicting actions of the School District stating Briggs was not terminated, but refusing to call him to substitute, Bryant cites to nothing in the record to support any one of these four alleged actions. (*See id.*)

(c) *Regarding Municipal Liability.*

Here, the School District's policies expressly forbid discrimination, including racial discrimination. (*See* Exhibit F, attached to Shteierman Decl.)  Therefore, Bryant cannot demonstrate a municipal policy under the Express Policy Theory.  Hence, he cannot establish municipal liability under this theory.

As to the Practice or Custom Theory and regarding the Non-Hiring Instances, Bryant presents no *Monell* argument as to that claim.  Nor does the evidence in the record support the existence of such a policy.  It is simply not enough for Bryant to rely on his non-hiring to the First or Second Posting to evince a widespread or persistent practice of racial discrimination.  Moreover, there is non-controverted evidence showing the School District hired an African-

American substitute custodian to a full-time position.  (*See* Briggs Affidavit at ¶23.)  There is also non-controverted evidence regarding the racial composition of the School District's full-time and substitute custodial staffs (*see* Defendants' LR 56.1 Statement ¶¶34, 35) which, at least circumstantially, would rebuff an inference of a custom or policy of racial discrimination in hiring.  *Cf., Dwares v. City of N.Y.*, 985 F.2d 94, 100 (2d Cir. 1993)("The mere assertion, however, that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference.").  Accordingly, on the record presented, a rational fact-finder could not find in Bryant's favor under this theory of municipal liability.

As to the Practice or Custom Theory and regarding the Non-Calling Instances, Bryant cites no evidence to support the alleged "triggering" events (*see* Bryant's Opp'n at 9), which the Defendants contend – at their essence – are that the School District failed to follow its policy in investigating the Westerbeke Complaint.  (*See* Defendants' Reply at 7.)  "'Conclusory allegations of municipal liability will not defeat a motion for summary judgment on a *Monell* claim.'"  *Carter v. County of Suffolk*, No. 12-cv-1191, 2013 WL 6224283, at *4 (E.D.N.Y. Dec. 2, 2013)(quoting *Sheikh v. City of N.Y., Police Dep't*, No. 03-cv-6326, 2008 WL 5146645, at *11 (E.D.N.Y. Dec. 5, 2008)); further citation omitted).  Thus, without the evidentiary foundation to support his argument of municipal liability based on the Practice or Custom Theory, there is nothing upon which a rational fact-finder could base a finding in Bryant's favor.

As to the Final Policy-Making Theory and regarding the Non-Hiring Instances, Bryant has not established that, as a matter of law, Briggs was the final policy maker regarding the School District's hiring policies.  However, it is the plaintiff-employee's burden to do so.  *See*

*Gerardi*, 124 F. Supp.3d at 227 (citing *Jeffes*, 208 F.3d at 57). Indeed, in his Complaint, Bryant acknowledges the Board maintained control over hiring policies. (*See* Complaint at ¶38.) *See also Gerardi*, 124 F. Supp.3d at 227-28 (under New York Education Law, a Board of Education "maintains control over policies regarding the hiring process"). Nor has Bryant attempted to establish that Briggs was given hiring policy-making authority by delegation or some other means and has presented no evidence which would support such a position. Therefore, on this summary judgment record and under this theory, Bryant cannot establish *Monell* liability.

As to the Final Policy-Making Theory and regarding the Non-Calling Instances, Bryant has not proffered evidence that would permit the inference that Briggs is the individual responsible under state law for making policy regarding investigating harassment complaints. *See Gerardi*, 124 F. Supp.3d at 227 (citing *Hurdle*, 113 F. App'x at 425; further citation omitted) (to show a district employee is a "final policymaker", a plaintiff must show either that the individual is (i) responsible under state law for making policy in the subject area, or (ii) has the power to make official policy on the particular issue involved in the action). Nor has he presented any evidence supporting a contention that Briggs had authority, or was delegated it, to establish the official policy of investigating claims of harassment. *See id.*

To the extent Bryant's arguments can be construed as his arguing that the Non-Calling Instances were tantamount to termination, he has not pointed to any delegation by the Board to Briggs of its policymaking and oversight authority with respect to the School District's firing policies. In any event, the summary judgment record demonstrates that the Board has oversight authority with respect to harassment complaint investigations. (*See* Exhibit F, attached to Shteierman Decl. ("Non-Discrimination and Anti-Harassment in the School District" at 2-4).)

Therefore, Bryant has not raised a material issue of fact suggesting that Briggs was a "final policymaker" when he directed that Bryant not be called as a substitute pending the conclusion of his (Briggs') investigation of the Westerbeke Complaint. Hence, Bryant cannot maintain his § 1983 claim as a matter of law.

(6) <u>Individual Liability</u>

(a) *The Defendants' Position*.

Relying on Second Circuit precedent that personal liability under §§ 1981 and 1983 must be predicated on an individual's personal involvement in the claimed violation, *see Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 122 (2d Cir. 2004); *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 75 (2d Cir. 2000), Defendants contend Bryant cannot establish such liability as to the Trustees or Superintendent Giani having failed to proffer any evidence of their individual involvement in the Non-Hiring Instances or the Non-Calling Instances. (*See* Defendants' Memo in Supp. at 21.) Without the requisite personal involvement, Bryant's claims against the Trustees and Superintendent Giani cannot stand. (*See id.*)

(b) *Bryant's Response*.

Without citation to the record, Bryant contends in a conclusory manner that "[t]here are sufficient facts established to find a causal nexus between the acts and omissions of the individual board members' and his alleged de facto termination. (Bryant's Response at 9.) Bryant asserts the Trustees "either ignored or failed to address . . . Briggs' ultra vires actions." (*Id.*) Further, he incorrectly states that the "Defendants raise the argument of lack of individual involvement only as to the Board Members, not the Defendant Superintendent . . ." (*Id.*)

(c)  *Regarding Individual Liability.*

First, it is clear that the Defendants' position regarding individual liability extended to Superintendent Giani, as well as the Trustees, notwithstanding Bryant's erroneous contention to the contrary.  Moreover, in his Response, Bryant does not press this Court to find Superintendent Giani individually liable, either by argument or by citing to evidence that would support such an argument.

Second, Bryant's argument in favor of individual liability as to the Trustees is focused on the Non-Calling Instances.  He appears to have abandoned his claim of finding them liable for the Non-Hiring Instances, having failed to present either an argument in support of such liability or evidence which would present a triable issue.  What Bryant has done here is not sufficient to overcome a motion for summary judgment, *i.e.*, relied on mere speculation or conjecture as to the true nature of the facts.  *See Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (noting that to defeat a summary judgment motion, the non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation" (internal quotation mark omitted)); *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986) ("[A] party [may not] rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment.").  Having failed to present the requisite personal involvement of the Trustees or Superintendent Giani in either the Non-Hiring Instances or the Non-Calling Instances, no rational fact-finder could find in Bryant's favor on this theory of liability.

(7) <u>Qualified Immunity</u>

(a) *The Defendants' Position*.

The Defendants argue that Bryant has not set forth a viable constitutional claim (*see* Defendants' Memo. In Supp. at 22.), *i.e.*, either a right to be hired as a full-time custodian or a right to be called as a substitute custodian. They further allege "there is not one piece of evidence . . . in the record" supporting Bryant's claims that the individual defendants violated his rights. (*See id.*) To the extent Bryant bases his claims against the individual defendants on their supposed failure to follow established policy, such action would fall within the "breathing room" afforded them in making reasonable – even if mistaken – judgments. (*See id.* (citing *Zalaski*, 723 F.3d at 389).)

(b) *Bryant's Response*.

Failing to cite to the record, Bryant contends his claim is based on the denial of his "right to the procedures under the [School] District's complaint policy before being summarily discharged by . . . Briggs." (Bryant's Opp'n at 10.) He argues Briggs knew or should have known (1) Bryant was entitled to an investigation, and (2) Briggs did not have authority to terminate Briggs. (*See id.*) Bryant also posits that the Trustees and Superintendent Giani (1) knew or should have known they violated the School District's policies and Bryant's due process rights when they "ratifi[eid]" Briggs' "unlawful termination," and (2) they were negligent in not investigating Bryant's complaints. (*Id.*)

(c) *Regarding Qualified Immunity*.

First, Bryant has not established a constitutional right that has been violated. That is, Bryant has not presented any evidence that, as a matter of law, he had a protected property

interest in his substitute custodial position. Nor has the Court found authority that would support Bryant's contention of a protected property interest in that job. *Cf., e.g., Rosendale v. Mahoney*, 496 F. App'x 120, 121-22 (affirming district court's conclusion that under New York law, plaintiff has no protected property interest in employment as a per diem substitute teacher; plaintiff was at-will employee[14]). Given the absence of a viable constitutional claim, the qualified immunity issue is rendered moot.

However, assuming *arguendo*, that Bryant did have such a protected property interest, it was, nonetheless, objectively reasonable, as a matter of law, for Briggs to direct the head custodians to cease calling Bryant as a substitute pending the conclusion of the investigation of the Westerbeke Complaint. Given the nature of the complaint in conjunction with Bryant's initial reaction (*i.e.*, stating only "Wow" during meeting with Briggs and acknowledging writing the Note (*see, e.g.*, Bryant 50-H Exam at 30:4-8, 15-17)), even if Briggs was mistaken in his implementing an interim restriction (*see* Briggs' Affidavit at ¶18), it was reasonable under the attendant circumstances. *See Almonte v. City of Long Beach*, 478 F.3d 100, 109 (2d Cir. 2007)("[A]n official is entitled to qualified immunity . . . if the official's actions were not objectively unreasonable in light of clearly established law.").

---

[14] In *Rosendale*, the district analyzed the school district's form letter to plaintiff, which notified plaintiff of his wage, the procedure for placement on the "Substitute Calling Service" list, and the grounds for automatic removal from that list. It found said form letter was not a contract and, therefore, plaintiff was an at-will employee. *See* 496 F. App'x at 122. Here, by comparison, the one form letter in the record, which Bryant received, indicated he was an approved as a substitute custodian from July 1, 2014 to June 30, 2015 at an hourly rate of $11.00. (*See* Exhibit L, attached to Gilliam Decl.) Since the *Rosendale* form letter, which contained more terms regarding employment, was found not to be a contract, Bryant's form letter would, likewise, be found not to be a contract.

Finally, Bryant's arguments suffer from the fact that he chose not to participate in (1) the further investigation of the Westerbeke Complaint, or (2) his Racial Discrimination Letter Complaint. Quite simply, one cannot have it both ways. That is, Bryant cannot be heard to complain about not being called back to substitute, after the initial suspension, when the School District made several overtures to him to meet again in order to conclude the Westerbeke Complaint investigation (*i.e.*, have Bryant come in to explain his reasons for approaching Westerbeke). Nor can he be heard to complain that the School District never investigated the Racial Discrimination Compliant when it asked for his participation in that investigation (by way of attending a meeting), but he declined to do so. Similarly, the alleged "termination" arguments Bryant raises are unavailing since – as his own evidence demonstrates – the School District took no action to terminate him. In sum, Bryant's arguments fail to persuade and his evidence, or lack thereof, fails to show that Briggs is not entitled to a qualified immunity defense.

(8) <u>Retaliation</u>

(a) *The Defendants' Position.*

The Defendants contend that Bryant cannot make out a prima facie case of unlawful retaliation since the actions which he asserts are retaliatory happened prior to Bryant's Racial Discrimination Letter Complaint. (*See* Memo. in Supp. at 19-20.) The Defendants highlight that the Racial Discrimination Letter was sent on January 17, 2014, which is almost four months *after* the September 24, 2013 meeting between Briggs and Bryant, during which Bryant "was advised that he would not be called as a substitute until the investigation could be completed." (*Id.* at 20.) They also posit that "[t]he evidentiary record is devoid of any inference that the [School] District's decisions were undertaken based on impermissible considerations of Mr. Bryant's race,

or complaints of such treatment." (*Id.*)  Thus, the argument goes, since Bryant cannot make a prima facie showing of unlawful retaliation, that cause of action must be dismissed.  (*See id.*)

(b)  *Bryant's Response.*

Bryant has not responded to the Defendants' arguments regarding his retaliation claim. (*See* Bryant's Opp'n *in toto*.)  As a result, Defendants ask the Court to construe's Bryant's silence regarding his retaliation claim as an abandonment of that claim.  (*See* Defendants' Reply at 9 (citing *Kronck v. L.P. Thebualt Co., Inc.*, 70 A.D.3d 648, 649 (2d Dep't 2010).)

(c)  *Regarding Bryant's Retaliation Claim.*

As noted, the Court has already determined that where a plaintiff has not pursued a claim by failing to raise an argument supporting it, the claim will be deemed waived.  (*See supra* at Part III(B)(4)(b), p.41.)  Even if that were not so, the Court would determine that the Defendants are entitled to summary judgment on Bryant's retaliation cause of action for the reasons discussed below.

Here, the protected action Bryant engaged in was sending his Racial Discrimination Letter Complaint to Briggs.  *See Villavicencio*, 56 F. Supp.3d at 187 (the "Second Circuit has recognized that protected activity includes informal protests of discriminatory employment practices, including making complaints to management")(citation omitted).  There is no dispute that the Defendants were aware of the Racial Discrimination Letter Complaint.  (*See* Exhibit P (Letter from Attorney Spencer (Defendants' counsel) to Attorney Gilliam (Bryant's counsel) (Feb. 20, 2014)("It is my . . . understanding your client recently filed a complaint with the [School] District setting forth claims of discrimination in connection with his employment."), attached to Schteierman Decl.)  In pleadings, Bryant claims that he suffered adverse employment

action by not being called back to work "from the end of September, 2013, to date . . . ." (Complaint at ¶75.)  However, to withstand a summary judgment motion, the nonmovant cannot rely upon the pleadings to do so.  *See Gottlieb*, 84 F.3d at 518 (plaintiff cannot rely on allegations in his pleadings to defeat summary judgment motion).  Moreover, as mentioned, *supra*, having failed to present any arguments in his Opposition regarding retaliation, Bryant similarly has not pointed to any evidence of suffering an adverse employment action.  Additionally and significantly, since the School District stopped calling Bryant as a substitute custodian before he sent his Racial Discrimination Letter Complaint (*i.e.*, late September 2013 versus January 17, 2014), that timing undermines his presumed reliance on the evidence of non-calling to establish the third prong of a prima facie retaliation claim, *i.e.*, demonstrating a materially adverse action due to sending the Complaint.  *See, e.g., Jones v. Rochester City School District*, 2017 WL 362821, at *2, --- F. App'x --- (2d Cir. Jan. 25, 2017) (affirming district court's granting defendant's summary judgment motion were alleged adverse employment action occurred before knowledge of protected activity).  Finally, Bryant has not presented any evidence supporting the fourth prong of a prima facie retaliation case, *to wit*:  a but-for causal connection between his sending the Racial Discrimination Letter Complaint and the *pleaded* adverse employment action, which cannot be relied upon to defeat a summary judgment motion.  *See Gottlieb*, 84 F.3d at 518. Since Bryant has not presented evidence which would support the third and fourth prongs of his prima facie case of retaliation, no rational fact-finder could find in his favor.

Furthermore, even if the Court were to find sufficient evidence supporting a prima facie case of retaliation, the Defendants have presented evidence of a legitimate, non-discriminatory reason for their non-calling: given the nature of the Westerbeke Complaint, their need to ensure

the safety of their employees pending the completion of their investigation thereto.  (*See* Briggs

Affidavit at ¶18.)  That evidence would satisfy their shifted burden of proof, creating a renewed

burden for Bryant, *i.e.*, showing pretext for the adverse employment action.  Bryant has not

produced any evidence that would rebut the Defendants' stated reason for its actions.  Hence,

even if Bryant were to have pursued his retaliation claim, on the record presented, a rational fact-

finder could not find in Bryant's favor on that cause of action.

C. *Bryant's State Law Claims*

      Having determined that the Defendants are entitled to summary judgment on all of

Bryant's federal claims, the Court declines to exercise supplemental jurisdiction over Bryant's

remaining state law claims.  *See* 28 U.S.C. § 1367(c)(3); *see also Pension Benefit Guar. Corp. v.*

*Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 727 (2d Cir. 2013) ("It is well to recall that ' 'in

the usual case in which all federal-law claims are eliminated before trial, the balance of factors to

be considered under the pendent jurisdiction doctrine–judicial economy, convenience, fairness,

and comity–will point toward declining to exercise jurisdiction over the remaining state-law

claims.' '" *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 306)(2d Cir. 2003)(quoting *Carnegie-*

*Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1998))); *Kolari v. New York-Presbyterian Hosp.*,

455 F.3d 118, 122 (2d Cir. 2006) (same).

## IV. Conclusion

Accordingly, IT IS HEREBY ORDERED that the Defendants' Summary Judgment Motion is GRANTED. The Clerk of Court is directed to enter judgment in favor of the Defendants as to Counts I, II, III, and IV of Bryant's Complaint. Bryant's state law claims, Counts V and VI, are dismissed without prejudice.

Dated this 31st day of March  2017 at Central Islip, New York.

_____/s/_____
Denis R. Hurley
Senior District Court Judge, E.D.N.Y.